DANIEL B. COE, EXECUTOR, APPEAL FROM PROBATE.

First Judicial District, Hartford, May Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

If a husband who is entitled by statute (General Statutes, § 2792) to the use for his life of all the personal property of his wife, sees fit to accept the provisions of her will which gave him but a life estate in the "rest and residue" after the payment, within six months of her decease, of certain legacies, he is bound by such election; and if he, as executor, voluntarily pays such legacies in accordance with the terms of the will, he cannot thereafter be authorized by any court to sell the remaindermen's interest in the estate to replace the amount thus voluntarily relinquished in satisfaction of such legacies.

An appeal from probate was taken by the appellant in his capacity as executor, but the reasons of appeal in the Superior Court were signed by him both as an individual and as executor. The appeal to this court was also taken by him in both capacities. *Held* that this was an exceptional and unusual course of procedure, and the consideration of the case by this court must not be regarded as a precedent for like procedure in the future.

[Argued May 16th—decided May 29th, 1894.]

APPEAL from two orders and decrees of the Court of Probate for the District of Middletown, taken to the Superior Court in Middlesex County and tried to the court, *Prentice, J.,* upon demurrer of appellees to the reasons of appeal. The

court sustained the demurrer and thereafter the appeal was dismissed by the court, *Ralph Wheeler, J.*, upon motion of the appellees, and the appellant appealed to this court for alleged errors in the rulings of the court below. *No error.*

The case is sufficiently stated in the opinion.

*Henry G. Newton* and *Philip P. Wells*, for the appellant.

*Burton Mansfield* and *Donald G. Perkins*, for the appellees.

FENN, J. The appellant, Daniel B. Coe, was married to Emily S. Coe in 1862. She died in January, 1892, leaving an estate in personal property valued at $42,000. She also left a will in which she first provided for the payment of her just debts and funeral charges, then gave three legacies, one of three thousand dollars to her sister, and two of one thousand dollars each to grand-daughters of her husband. These legacies she provided should be paid by her executor within six months after her decease. She then gave to her husband the " rest and residue " of all her property during the term of his natural life, " to receive the rents, issues and profits thereof for his own use, benefit and support." She then gave the remainder over to certain relatives of her own, other than her sister, " to them and their heirs absolutely and forever." She further provided as follows :—

" *Sixth.* I direct that my said husband shall have the exclusive management and control of my said property without interference from any one and without giving any security for the same or the management thereof.

" *Seventh.* I appoint my husband, Daniel B. Coe, executor of this, my last will and testament, and direct that no bond be required of him."

The appellant presented said will for probate. It was proved, and he was duly qualified as executor thereof. Appraisers were appointed, and an inventory of assets prepared, filed and accepted. No suggestion was made in such document that the estate was the owner of a remainder interest

only in such assets, and no claim that the appellant had any statutory title thereto or right therein. Within six months after the death of the testatrix, the appellant paid the legacies in accordance with the direction of the will.

In December, 1892, the appellant, as executor of the will of Emily S. Coe, presented to the court of probate an application reciting the facts, alleging himself, as husband of the decedent, to be the legal owner of "the use, interest, and income of all the property comprised in the estate of said decedent," and asking for an order "that a sufficient amount of the property of the estate, subject to the life interest of the applicant, be sold to raise so much money as would be necessary to pay the legacies, and any other amounts which may be needed in the settlement of the estate." It was stated that a total sum of $5,500 would be required for such purpose. This application was opposed by those entitled under the will to the remainder interest, and was denied by the court.

Afterwards, in February, 1893, the appellant presented to the court of probate his account as executor, which was in the ordinary form, charging himself with the entire personal assets of the estate and with the income and dividends thereon, and then crediting himself with the amount of the legacies paid, probate fees, advertising, traveling, incidentals, legal services, income and dividends, and a sufficient amount of securities on hand to balance the debit side. To this account was appended the following: "11. The executor while claiming under the will the right to what the will gives him, except as to the watch and jewelry, claims also his legal life estate in the five thousand dollars used to pay legacies, and insists upon his right to be reimbursed for his life interest in the same, and to sell the remainder in sufficient property therefor." The court allowed the account, as stated, except the item recited, which it disallowed. From these two decrees of the court of probate, namely: the denial of his application as executor to sell, and the disallowance of item 11 of the account, the appellant appealed to the Superior Court, which court sustained a demurrer to his reasons of appeal,

in which the above facts and proceedings were stated, and dismissed the appeal; and from that judgment the present appeal to this court was taken.

In reference to this proceeding, we ought perhaps to notice the exceptional and unusual manner in which it comes before us. The original appeal from the court of probate, embracing both decrees, was taken by Daniel B. Coe, executor. The reasons filed in the Superior Court were signed by said Daniel B. Coe, both as executor and as an individual. The appeal to this court is also taken by him in both capacities. On the other hand the demurrer of the appellees to the reasons of appeal, which was sustained by the Superior Court, was so general in character that it would require very liberal construction to regard it, as the court below appears to have done, without objection by the appellant, as complying with General Statutes, § 873, which provides that: " All demurrers shall distinctly specify the reasons why the pleading demurred to is insufficient." Nor is the above statement exhaustive as to the informalities and infelicities in the makeup of the case presented to us. It is therefore only with a distinct declaration that our present action must not be regarded as establishing any precedent by which our future conduct may be regulated, and somewhat in view of an express waiver upon the record signed by counsel for the appellees, of objections to the appellant's appeal, that we have concluded to fully consider the real question involved, as if in all respects correctly before us; believing that thereby we shall best promote the interests of justice and most speedily terminate an unfortunate contention.

By virtue of the statute law of this State, General Statutes, § 2792, the appellant had a vested life interest in all the personal property of his wife. It is true that he held such property in trust, but the wife being dead and there being no issue of the marriage, his right to receive and enjoy the income thereof during his life, was absolute. It was not in the power of his wife by her own act and without his consent, either by will or otherwise, to place any limits or restrictions on that right. The language of this court in *Sill*

v. *White*, 62 Conn., 435, a case on which the appellant greatly relies, is equally applicable in this case. The gift of Mrs. Coe of a life interest in her personal property "for the life of her husband was an attempt to give what she did not have to give. It was not in her power to direct where this estate should vest. Upon this subject the law spoke, and spoke unqualifiedly. It was, furthermore, an attempt to give to one who by a higher right than the act of the testator was to become, upon the testator's decease, entitled to the estate purported to be given." It follows that the wife could impose no duty upon the husband to part with any portion of the estate, for the purpose of paying legacies out of it, during his life. If he chose to insist upon his statutory right there was no power in the wife, and there is none in the law, by the exercise of which he could be prevented from so doing. The will, however, gave him certain privileges in reference to the life estate which the testatrix sought to create, that the statute did not confer. It also released him from certain obligations in regard to such estate, which the statute imposed. General Statutes, §§ 2793, 2795.

The appellant, as we have seen, claims his statutory rights and also "under the will, the right to what the will gives him." He insists that *Sill* v. *White* is an authority in direct support of such claim. In that case it appeared that the husband was executor of the will, accepted the trust, and settled the estate. But so far as the property in controversy was concerned—real estate—in which the law gave him a tenancy by the curtesy, and the will a life interest together with a power, it was expressly declared in the opinion that he had made no election as to which title he would take. "He has said nothing, has done nothing. He has remained passive and silent, as he had a right to do. He has not even indicated that he proposes to avail himself of the privileges which the will gives him. Manifestly he cannot thus be held to have lost his life estate by the curtesy." In the case now before us the husband has surely "indicated that he proposes to avail himself of the privileges which the will gives him." He distinctly so states. He has not remained silent

or passive. He has said something and done something. He has paid legacies as the will directed, but which he was under no obligation to do unless he saw fit to be directed by the will. Having paid such legacies he claims the privileges which the will attaches, not to the estate which the law creates, but to the estate which the will undertook to create in law, and to which his act in paying such legacies out of the estate apparently gives existence in fact, namely: a rest and residue remaining after such legacies are paid. These privileges he now asks shall be detached from the residue of the estate, to which they appertain under the will, and attached to the estate under the statute, to which they do not seem to us to be in harmony or accord. Indeed, such an estate has no longer any existence, in its entirety. The reason is that the appellant's own voluntary act has destroyed it. He has parted with assets which, as statutory trustee, it was not only his right, but his duty to retain. What he now asks is authority to part with a remainder interest in other assets which, as statutory trustee, it is also his duty to retain, and which, so long as he holds them, not under the will but under the law, no court can authorize him to dispose of. General Statutes, § 2793. This he asks in order that a payment which was only justifiable because the will directed it, may be made up to him because, while claiming all the rights which the will gives him he also claims, in opposition to it, the legal rights which are in conflict with its provisions.

Is it possible that by any authority of statute or course of procedure, a court of probate can do that which the appellant asks, or assist him in the creation of a fresh fund on which to attach a new life estate in substitution for that with which he has voluntarily parted? Let us give to this matter a little further consideration. Taking the appellant in his somewhat manifold aspect of executor, statutory trustee, and individual, and giving him the full benefit of the complex relation—for he perhaps correctly states an anomaly of his position in saying it is necessary that he should appear in all capacities in order to have any apparent standing in

any—what do we find? He has used five thousand dollars of the principal of the *corpus* or fund, to which he was by statute entitled to the life use, to pay legacies as directed by the will. The principal is thereby depleted five thousand dollars. What, then, does he desire in return for his voluntary act? In his application to sell he requested "the sale of the remainder, subject to the life interest of your applicant, in sufficient of the assets of the estate, to raise the sum of $5,500." We have seen that, as statutory trustee, the court could give him no authority to sell for any purpose. As executor he needed none to sell any proper interest and for any proper purpose. But suppose the order passed and the sale made, either of specific assets, or of an undivided specified fractional interest in the entire remainder estate, subject to the appellant's life tenancy, sufficient to raise the sum of $5,500, what would become of the money thus raised through an inevitable sacrifice of value? The appellant would only be entitled to a life interest in it. The money raised by a sale of the estate would belong to the estate, and all this that the appellant might have the life use of a sum as large as that with which he originally started. The change would be a speculation on the duration of the life of Daniel B. Coe, on which would be based a wagering contract to give the estate of Mrs. Coe fifty-five hundred dollars down, in consideration of receiving a larger specified sum out of that estate when Daniel B. Coe ceased to have personal occasion to enjoy its use.

But the appellant, at the close of his administration account, made, as we have seen, in the court of probate, a different-claim, namely: that the remainder in sufficient property should be sold to reimburse him for his life interest in the sum used to pay legacies. In other words, as we understand it, that the present worth of an annuity equal to the income on the sum in question, for a length of time corresponding to his expectation of life, should be ascertained, and then sufficient, not of the principal, but of the remainder interest in the principal, subject to his life use, should be sold, and the avails paid by himself, as executor and beneficiary under the will, to himself, as statutory trustee under the law,

for his own benefit, to reimburse him for what he has lost in the latter capacity, by paying the legacies in the former capacity. Added to these distinct claims, the appellant in argument has suggested that probably the true way would be to empower him in each year to use, in addition to the income, sufficient also of the principal to make good what he has lost by way of interest or use by using principal to pay legacies; of course, also, with an annually increasing sum for reimbursement of what he will thus lose in interest by such further absorptions of principal.

It seems to us that every one of the courses above indicated, and every other which can be conceived for the relief of the applicant from his entirely self-assumed and unnecessary position, is capable of being met by insuperable objections. A fundamental difficulty with them all is, that however the appellant's position may be stated, it necessarily involves an unwarranted interference with the rights of the residuary remainder legatees under the will of Mrs. Coe, to receive precisely what the instrument confers upon them in its expression of the bounty of the testatrix. Their rights can in no way be impaired or rendered less beneficial by any act done by the appellant, either as statutory trustee, as executor, as individual, or as each separately or all at once, without their approval or consent.

It is said that these legacies, if unpaid, would bear interest, commencing six months from the decease of the testatrix. The question is not before us, and we cannot decide it; but if this be true, it may be that these remainder legatees are benefited by the act of the appellant in paying the legacies, as the matter now stands. If so, it was a benefit which they never requested, and does not sanction an injury to which they refuse to assent. They are entitled to insist that the appellant should either decline to pay these legacies at all, during the continuance of his life estate; or that having paid them out of the property of the estate, he should be content to remain in the position in which such payment leaves him, and not extricate himself from a situation which he was under no obligation to take, by compelling them to a

change in their own.   So long as the appellant stood squarely
upon his rights as trustee under the statute, or as legatee
under the will, his single position as to either could not in
any wise infringe the rights of these legatees.   In case of his
election to claim as statutory trustee, and not under the will,
they receive at his death the residuary estate, that is the en-
tire remainder, charged with the legacies, and this, whether
such legacies do or do not bear interest while payment is de-
ferred.   In case of the appellant's election to claim under
the will, and not as statutory trustee, these legatees receive
precisely what the testatrix intended, and as she intended.
But by the appellant's double election to claim under both ;
to gain all the rights conferred by both, including the as-
sumed right of exemption by each from complying with the
requirements of the other; by such election, if valid, these
legatees, instead of the estate which the will gives them,
would receive by compulsion of law, a different title, and in-
terest, of its arbitrary creation.

It surely requires neither argument nor extended state-
ment to demonstrate that a clear remainder title to specific
assets, charged only with the payment of definite legacies,
with or without interest arrears, is far more desirable and
beneficial than a tenancy in common in the remainder inter-
est, either in such specific assets or in the general bulk and
*corpus* of residuary personal estate.   It is also evident that
any sale of such future interest, expectant on a particular
life estate of uncertain and speculative duration, would yield
at best, only an unsatisfactory approximation of its actual
value, and would involve a probable sacrifice to the remain-
der interest, which nothing but the specific, express sanction
of law could either justify or excuse.

It is perhaps only stating the above considerations in an-
other way, to say that not only is no power vested in that
strictly statutory tribunal, the court of probate, to grant the
appellant any such relief as that which he seeks—and there
is none in the Superior Court on appeal, to do more than the
court of probate itself could do in the first instance—but
further, we can conceive of no such power in any court or

in any form of proceeding. Indeed, it must be said that we are unable to see anything equitable in the appellant's contention. Doubtless the testatrix desired that he should pay these legacies within six months after her decease. She said so expressly. She must have presumed that he would be entirely willing to do it. Two of them were to his own grandchildren, not to hers. It matters little whether she knew what his legal rights were or not. If she did know, she knew also that he was not obliged to pay the legacies unless he chose; but if he did not he would take no estate in the rest and residue under her will. If she did not know, then she believed he would be obliged to pay these legacies as directed. In either case alike, the payment of such legacies in fact was a condition precedent to the creation of an estate in a "rest and residue," to which the liberal provisions of exemption, not to the executor from giving bonds, but to the life tenant from interference or security, attached. It is certain she did not contemplate, and no one could have contemplated, that the appellant would settle the estate under the will, with inventory and administration account, showing the payment of the legacies as required, and out of the estate, thereby waiving, at least for the time being, his right under the statute to the uninterrupted possession of the property, and entitling himself to claim under the will " the right to what the will gives him ; " and that then, having done this, he should ask that because he had complied with her wishes, as to her sister and his grandchildren, the courts for the administration of justice should sanction his destruction of her equally clear and defined purpose as to those of her kin other than her sister, and not of his, in whom she had vested the remainder of her estate.

Finally, it is undisputed law in this State that "a husband may by his own acts divest himself of the trust which the statutes give him in his wife's property." *State* v. *French*, 60 Conn., 481. Whether this has been done in a particular case is ordinarily a question of intention to be inferred or presumed from conduct. In this case the demurrer is said to admit, for the purposes of the trial, an allegation not in

the appeal but in the application to sell, therein referred to and made an exhibit, that the appellant has "never abandoned" his right to the income of his wife's property. It is immaterial whether such admission prevents our holding what the facts would certainly otherwise conclusively establish; for the well recognized doctrine of election, with which *Sill* v. *White* is in no sense in conflict, but which it clearly recognizes, is equally applicable and conclusive. That principle was aptly stated by SHAW, C. J., in the old case of *Hyde* v. *Baldwin*, 17 Pick., 303, 308, where he lays it down as an established rule of equity that "a man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent the full effect and operation of every part of the will."

There is no error in the judgment complained of.

In this opinion the others judge concurred.